IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| MATTHEW GROARK,<br><br>    Plaintiff,<br><br>  v.<br><br>POLICE OFFICER FRANK TIMEK, et al.,<br><br>    Defendants. | Civil No. 12-1984 (RBK/JS) |

## OPINION

Plaintiff Matthew Groark alleges Atlantic City Police Officers Frank Timek ("Timek") and Sterling Wheaten ("Wheaten") beat him up without provocation and then filed false criminal charges. Plaintiff learned in discovery that from May 2001 to the present, Timek and Wheaten have collectively been the subject of approximately 78 complaints similar to those asserted here – excessive force, assault, threats, improper search and arrest, and malicious prosecution.[1] Atlantic City's Police Department ("Atlantic City") did not sustain any of the complaints and Timek and Wheaten were never disciplined. Plaintiff's Motion to Compel Discovery asks the Court

---

[1] The statistics for Timek and Wheaten cited in this Opinion are derived from Atlantic City's Internal Affairs Index Cards attached as Exhibit C to plaintiff's motion. Doc. No. 32. (Atlantic City has not argued the Index Cards are Confidential.) In the face of the messy compilation, the Court did its best to summarize the relevant numbers. Even if the Court's analysis is not 100% accurate, the essence of the numbers speak for themselves.

to Order Atlantic City to produce Timek and Wheaten's complete Internal Affairs ("IA") files so plaintiff can determine if Atlantic City's IA unit and investigations are a sham. Plaintiff argues that Atlantic City is deliberately indifferent to its police officers' misconduct and it condones the obvious consequences of its failure to properly train, supervise and discipline its officers. Plaintiff also argues he wants to get to the bottom of why it appears Timek and Wheaten repeatedly use excessive force with impunity. Plaintiff's motion has been fully briefed and argued. Plaintiff's motion is GRANTED.[2]

Background

On August 7, 2010, plaintiff was a customer at the Dusk Nightclub in Caesar's Casino, Atlantic City, New Jersey, where defendant police officers Frank Timek and Sterling Wheaten were working security. Plaintiff alleges that "[w]ithout provocation" Timek and Wheaten threw him down the stairs and punched and "kneed" him repeatedly. Complaint ¶¶26, 27. The officers then arrested plaintiff and charged him with obstructing the administration of law or other governmental function, resisting arrest, and aggravated assault. The aggravated assault charge was later reduced to simple assault. Id. ¶¶37, 38. All charges were subsequently dismissed. Id. ¶39.

---

[2] In New Jersey a municipal police department is not a separate legal entity from the governing municipality. Franks v. Cape May County, C.A. No. 07-6005 (JHR), 2010 WL 3614193, at *7 (D.N.J. Sept. 8, 2010). Accordingly, the Court will refer to Atlantic City and not the Atlantic City Police Department.

Plaintiff sued Timek, Wheaton and Atlantic City. Plaintiff alleges there was no probable cause to arrest him and that he was assaulted without cause or justification. Id. ¶¶42, 43. As to Atlantic City, plaintiff alleges it did not properly train its police officers and that its "customs, policies, practices, ordinances, regulations, and directives ... caused [his] false arrest ...." Id. ¶¶49, 52. Plaintiff also alleges that Atlantic City "has been deliberately indifferent to the violent propensities of its police officers, the individually named Defendant police officers in particular." Id. ¶53. Plaintiff's complaint includes Fourth Amendment claims for excessive force, false arrest and malicious prosecution. Counts IV and V of the complaint assert claims against Atlantic City for constitutional deprivations caused by "inadequate policies, procedures, and customs," and "inadequate training and supervision." See Monell v. Department of Social Services of City of New York, 436 U.S. 658 (1978).[3]

During discovery plaintiff requested all IA files regarding Timek and Wheaten and the August 7, 2010 incident. Plaintiff believes these records may include witness statements, officer statements, investigation documents, and "written depositions." Although Atlantic City objected to plaintiff's request it produced the "Internal Affairs Index Cards" (hereinafter "Index Cards") for

---

[3] The complaint also includes common law claims for assault and battery, false imprisonment, false arrest and malicious prosecution.

Timek and Wheaten.  As to Timek, the Index Card lists 52 complaints from May 30, 2001 to March 20, 2012.[4]  The complaints include, <u>inter alia</u>, allegations of "simple assault," "excessive force," "racial profiling," "racial slurs," "demeanor," "improper search," "false arrest,"  "threats and demeanor," and "improper arrest."  As to the "disposition" of these charges, 49 of the 53 listed incidents are marked "exonerated," "unfounded," or "not sustained."[5]  The Index Card for Wheaten lists 26 complaints from September 19, 2008 to April 26, 2012.[6] The complaints include allegations of "excessive force," "harassment," "improper search and demeanor," "simple assault and standard of conduct," "assault and neglect of duty," and "improper arrest."  All 26 complaints, except for one marked "Administratively Closed," are marked "exonerated" or "not sustained."

Complaints made against Timek and Wheaten by senior police department personnel fared no better than citizen complaints.  The

---

[4] Atlantic City argues an excessive number complaints were made because "any incident of a criminal apprehension with the use of a K-9 triggers an Internal Affairs investigation."  May 16, 2013 Letter Brief at 7, citing to Exhibit B, Doc. No. 34.  Although not clear, it appears that Atlantic City may be misreading its referenced K-9 Policy and Procedure.  The policy only requires that a "Use of Force Report" be prepared when a K-9 is involved in an incident, not an IA complaint. Also, the policy provides that if a K-9 bites someone the K-9 Unit Supervisor and Internal Affairs must review the circumstances to determine if there are policy, training and discipline issues to address.  The policy does not explicitly require that an IA complaint be recorded.

[5] No disposition is listed for excessive force charges on March 20, 2012 and April 12, 2012.  Timek's charge of "missing property" on July 12, 2005, is marked "administratively closed," and a charge of "unsworn falsification to authorities" on March 20, 2006, was "sustained."

[6] The Court is not certain that a complete list of Wheaten's IA history has been produced.  Olin Jardue Caldwell, Jr., (C.A. No. 94-5049(JHR)) filed a §1983 lawsuit against Wheaten on November 14, 1994.  If Wheaten worked as an Atlantic City police officer at least as early as 1994, the Court cannot easily explain why September 19, 2008, is the first listed IA complaint on his Index Card.

charges made by Chief Snellbaker on October 5, 2004, Captain Wm. Burke on March 20, 2005, Captain Dooley on March 7, 2006, and Acting Chief Jubilee on October 11, 2006, were also not "sustained." The same is true for Chief Mooney's July 16, 2009 complaint against Wheaten of "simple assault and standard of conduct."

Plaintiff filed the instant motion after Atlantic City refused to produce the complete IA files for Timek and Wheaten rather than just their Index Cards. Plaintiff argues the requested IA files are relevant to Atlantic City's Monell liability and whether "there was a clear pattern of misconduct and constitutional violations by the Defendant Officers in the months and years leading up to physical assault of the Plaintiff." Motion at ¶16. Plaintiff also argues, "[s]uch a pattern would demonstrate that Atlantic City had a policy and custom of deliberate indifference to the persistent problem of police brutality and false arrests." Id. at ¶17.

Atlantic City makes several arguments in response to plaintiff's motion. First, it argues "[p]laintiff should not be entitled to confidential files involving completely separate and irrelevant incidents and individuals when he failed to make a complaint himself." May 16, 2013 Letter Brief ("LB") at 2. Second, plaintiff argues the requested documents should not be compelled because plaintiff "failed to satisfy the pleading requirement for his §1983 claim." Id. Third, Atlantic City argues the requested documents are privileged and irrelevant.

Discussion

   The Court will first discuss two important topics to put the
subject discovery issue in context.   The first topic is the internal
affairs process that all New Jersey municipalities must follow.   The
second topic is a general summary of Atlantic City's potential Monell
liability.

   1. The Internal Affairs Process

   Pursuant to N.J.S.A. 40A:14-181, municipalities such as
Atlantic City are required to adopt and implement internal affairs
guidelines that must be consistent with the guidelines governing the
"Internal Affairs Policy and Procedures" (hereinafter "IAPP") of the
Police Management Manual promulgated by the Police Bureau of the
Division of Criminal Justice of the Department of Law and Safety.[7]
The purpose of the IAPP is to "assist the State's law enforcement
agencies with the investigation and resolution of complaints of
police misconduct that originate with private citizens or are
generated by the supervisors, officers or employees of a law
enforcement agency."   IAPP at 3.   The goal of Internal Affairs "is
to insure that the integrity of the [police] department is maintained
through a system of internal discipline where fairness and justice
are assured by objective, impartial investigation and review."   See
November 1992 Internal Affairs Memorandum of Robert J. Del Tufo,

_____
[7] The IAPP is available at
http://www.state.nj.us/lps/dcj/agguide/internalaffairs2000vi.2.pdf.

Attorney General ("Del Tufo AG Memo.") at 9, available at http://www.state.nj.us/lps/dcj/agguide/internal.htm. Three things must be done with regard to the internal affairs function. One, police departments "must implement an internal affairs policy that provides for a meaningful and objective investigation of citizen complaints of police misconduct." Id. Two, the behavior of police officers for misconduct must be monitored and tracked. Three, officer misconduct must be corrected. Id.

The purpose of the internal affairs unit is "to establish a mechanism for the receipt, investigation and resolution of complaints of officer misconduct." Id. at 13. Mandated internal affairs requirements include the following:

> • Each agency must thoroughly and objectively investigate all allegations against its officers.
>
> . . .
>
> • Each agency must establish and maintain an internal affairs records system which, at a minimum, will consist of an internal affairs index system and a filing system for all documents and records. In addition, each agency shall establish a protocol for monitoring and tracking the conduct of all officers.
>
> • Each agency must submit periodic reports to the county prosecutor summarizing the allegations received and the investigations concluded for that period. Each county prosecutor shall establish a schedule for the submission of the reports and specify the content of the reports.

> • Each agency must periodically release reports
> to the public summarizing the allegations
> received and the investigations concluded for
> that period. These reports shall not contain the
> identities of officers or complainants. In
> addition, each agency shall periodically
> release a brief synopsis of all complaints where
> a fine or suspension of ten days or more was
> assessed to a member of the agency. The
> synopsis shall not contain the identities of the
> officers or complainants.

Id. at 4-5. These are "critical performance standards that must be implemented." Id. at 5.

The IAPP describes the records Atlantic City must keep and the protocols it must follow. Atlantic City must:

> [M]aintain a comprehensive central file on all
> complaints received, whether investigated by
> internal affairs or assigned to the officer's
> supervisors for investigation and disposition.
> In addition, internal affairs should establish
> protocol for tracking all complaints received
> by the agency and the conduct of all officers.
> The protocol must include criteria for
> evaluating the number of complaints received by
> the agency and the number of complaints filed
> against individual officers.

Id. at 14. All citizen complaints must "be uniformly documented for future reference and tracking." Id. at 18. According to the IAPP a "thorough and impartial" investigation must be done for a proper disposition of a complaint. Id. at 27. The complainant and witnesses should be personally interviewed if circumstances permit and formal statements taken. Id. at 28. All relevant records should be obtained, reviewed and preserved. Id. At the conclusion of the IA investigation the investigator must prepare a written

report that consists of an "objective investigation report which recounts all of the facts of the case and a summary of the case along with conclusions for each allegation and recommendations for further action." Id. at 45. The report must also "contain a complete account of the investigation." Id. In addition, "a detailed chronology [must] be maintained of each investigation so that critical actions and decisions are documented." Id. at 20.

For each allegation in an IA investigation the conclusion must be recorded as "exonerated" (the alleged incident did occur, but the actions of the officer were justified, legal and proper), "sustained" (the investigation disclosed sufficient evidence to prove the allegation and the actions of the officer violated a provision of the agency's rules and regulations or procedures), or "not sustained" (the investigation failed to disclose sufficient evidence to clearly prove or disprove the allegation). Id. at 21, 45. An IA investigation file is required for all IA reports and all IA complaints must be recorded in an index file. The file must include "the entire work product of the internal affairs investigation." Id. at 46. These record requirements give Atlantic City "the ability to track the complaint records of individual officers and identify those officers with a disportionate number of complaints against them." Id. at 51. Procedures must be established "for dealing with problem employees." Id. at 51.

Atlantic City is required to prepare periodic reports, at least quarterly, for "the law enforcement executive that summarize[s] the nature and disposition of all misconduct complaints...." Id. at 48. Internal Affairs activity must also be reported to the county prosecutor. Id. An annual report that summarizes the types of complaints received and the dispositions of the complaints must be made available to the public. Id. at 50.

"The most critical aspect of the disciplinary process is the investigation of an allegation of police misconduct. Only after a complete, diligent and impartial investigation can a good faith decision be made as to the proper disposition of the complaint." Del Tufo AG Memo. Perfunctory investigations are prohibited. The process must be "real" and the investigation "meaningful and objective." IAPP at 51. The IA process:

> Must provide the citizen with "at least a rudimentary chance of redress when an injustice is done." It is not enough for police executives to adopt a policy governing the receipt, investigation and resolution of complaints of officer misconduct. The policy must be implemented and executed with a commitment to the integrity of the agency and the constitutional rights of the citizenry. Agencies with an objective and fair internal affairs process will limit their risk of civil liability. Agencies with a superficial or shallow internal affairs process run the risk of significant civil liability.

Id. The "linchpin" of the process to monitor and track the behavior and performance of individual police officers is "quality

supervision and an objective and impartial internal affairs process." Id.

 2. Monell Liability

Although a municipality may be liable under 42 U.S.C. §1983, it cannot be held liable on a theory of respondeat superior. Monell, 436 U.S. at 691. Under §1983 Atlantic City is only responsible for its own illegal acts. Id. at 692. This has resulted in a "two-path track to municipal liability," depending on whether the allegation is based on an alleged unconstitutional municipal policy or custom. Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996). As to policy, municipalities like Atlantic City are liable where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the body's officers. Id. at 690. As to custom, municipalities may be sued for "constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels." Id. at 690-91. Liability based on a custom rather than a formal adopted policy proceeds on the theory that the relevant practice is so widespread as to have the force of law. Board of County Com'rs. of Bryan County, Okl. v. Brown, 520 U.S. 397, 404 (1997). Custom may also be established by proof of knowledge and acquiescence. Fletcher v. O'Donnell, 867 F.2d 791, 793 (3d Cir. 1989). The Supreme Court has recognized that where a violation of

federal rights is a "highly predictable consequence" of an inadequate custom in a situation likely to recur, municipal liability may attach based upon a single application of the custom.  Monaco v. City of Camden, C.A. No. 04-2406 (JBS), 2008 WL 8738213, at *7 (D.N.J. April 14, 2008)(citing Board of County Com'rs, 520 U.S. at 409-410 (1997)).

In order to impose §1983 liability pursuant to a custom, "plaintiff must show that the municipal action was taken with the requisite degree of culpability and [there must be]... a direct causal link between the municipal action and the deprivation of federal rights." Board of County Com'rs, 520 U.S. at 404. Simply showing that plaintiff has suffered a deprivation of constitutional rights "will not alone permit an inference of municipal culpability and causation." Id. at 406.  Instead, plaintiff must demonstrate "that the municipal action was taken with 'deliberate indifference' to its known or obvious consequences…."  A showing of simple or even heightened negligence will not suffice."  Id. at 407.  A pattern or continued adherence to an approach that a municipality knows or should know has failed to prevent tortious conduct of police officers may establish "the conscious disregard for the consequences of [its] action necessary to trigger municipal liability." Id.  Deliberate indifference may also be shown if it is obvious that a policy or custom would lead to constitutional violations.  Berg v. County of Allegheny, 219 F.3d 261, 277 (3d Cir. 2000).

The decision in <u>Katzenmoyer v. Camden Police Department</u>, C.A. No. 08-1995 (RBK/JS), 2012 WL 6691746, at *4 (D.N.J. Dec. 21, 2012), discussed the fact that courts in this Circuit have grappled with the issue of what evidence a plaintiff must submit to support a <u>Monell</u> municipal liability claim under §1983. The case noted that statistical evidence standing alone, "isolated and without further context," is generally not enough to "justify a finding that a municipal policy or custom authorizes or condones the unconstitutional acts of police officer." <u>Id.</u> at *4 (citing <u>Merman v. City of Camden</u>, 824 F. Supp. 2d 581, 591 (D.N.J. 2010)). If a plaintiff relies mainly on statistics showing the frequency of excessive force complaints and how frequently they are sustained, the plaintiff must show why the prior incidents were wrongly decided and how the misconduct in the case is similar to that involved in the present action. <u>Id.</u> (citing <u>Franks v. Cape May County</u>, C.A. No. 07-6005 (JHR/JS), 2010 WL 3614193, at *12 (D.N.J. Sept. 8, 2010)). As the Court noted in <u>Franks</u> at *12 (citation and quotation omitted), "[r]ather than simply reciting a number of complaints or offenses, a plaintiff must show why those prior incidents deserved discipline and how the misconduct in those cases is similar to that involved in the present action." This can be done by showing "that the officer whom a plaintiff accuses of using excessive force has been the subject of multiple similar complaints." <u>Katzenmoyer</u>, 2012 WL 6691746, at *4. A plaintiff can also submit a sample of excessive force

complaints from the relevant police department "bearing similarities to her own case and arguably evincing a tendency on the part of the internal affairs division to insulate officers from liability." Id. at *5.

So, for example, even though the plaintiff in Katzenmoyer presented evidence that between 2003 and 2009, only one grievance out of 641 complaints filed against Camden police officers was sustained, the Court granted summary judgment to Camden on the plaintiff's Monell claim. The Court noted that the plaintiff did not offer a sample of the complaints for its evaluation, and that "standing alone" the statistical evidence it submitted did not support a finding of municipal liability under Section 1983. Id.[8] But see Worrall v. City of Atlantic City, C.A. No. 11-3750 (RBK/JS), 2013 WL 4500583 (D.N.J. Aug. 20, 2013). In Worrall the Court denied Atlantic City's motion for summary judgment based on the number of complaints against Wheaten, the related subject matter of the complaints, and the relatively short time within which the complaints were filed. Even though the complaints against Wheaten were either "not sustained" or he was "exonerated," the Court held that the jury could have inferred Atlantic City's acquiescence to Wheaten's alleged unlawful conduct, and could have inferred knowledge and deliberate indifference. Id. at *5. In the same vein, in Merman,

_____

[8] The Court also noted that the officer defendants did not have a history of multiple excessive force complaints. Id.

_supra_, the Court denied Camden's motion for summary judgment in an excessive force case asserting a _Monell_ claim.  The Court noted:

> Given the sheer number of civilian complaints in relation to the number of officer, and the pattern of escalation over the years, the significance of plaintiff's quantitative evidence is, unquestionably, substantial and greatly informs this Court's decision.

824 F. Supp. at 591.[9]

### 3. Atlantic City's Arguments

Several of Atlantic City's arguments merit only a short mention. The argument that plaintiff cannot compel the production of IA records because he did not file an IA complaint is meritless.[10]  See LB at 2. ("Defendants maintain the position that plaintiff should not be entitled to confidential files involving completely separate and irrelevant incidents and individuals when he failed to make a complaint himself.").  There is no support for the proposition that a party may not discover relevant IA files unless he/she files an IA complaint. Not surprisingly Atlantic City cites no credible support for its position.  Atlantic City relies on its guidelines

---

[9] It is noteworthy that in _Merman_ Camden's motion was denied after the Court reviewed "extensive Internal Affairs' records," comprised of at least forty reports.  _Id._ at 591-92. These are the same types of records plaintiff is requesting here.

[10] It is apparent that not all citizens who complain about excessive force file IA complaints.  For example, on September 16, 2011, Huschel B. Story filed a pro se §1983 complaint against Atlantic City and Officer Frank Timex (sic)(C.A. No. 11-5340 (RBK/JS).  Timek's Index Card does not list Story as making a complaint. The same situation exists for Seth Rouzier (C.A. No. 07-5218 (RBK/AMD)(date of incident ("DOI") November 5, 2005).  As to Wheaton, the same situation exists for Michael Troso (C.A. No. 10-1566 (RMB/JS))(DOI August 19, 2008), David Castellani (C.A. No. 13-5848(RMB/JS))(DOI June 15, 2013), Mohamed Ellaisy (C.A. No. 13-5401 (JBS/AMD)), and Janie Costantino (C.A. No. 13-6667 (RBK/AMD))(DOI July 20, 2012).

which provide that it may release the IA investigation to the attorney for an officer named in a lawsuit.  LB at 9.  However, Atlantic City ignores the portion of the IAPP which provides that an IA investigation may be released "[u]pon Court Order."  IAPP at 47. Further, Atlantic City disregards the substantial unassailable body of New Jersey case law which evidences that a court can Order the production of IA reports in a §1983 lawsuit.  See, e.g., Torres v. Kuzniasz, 936 F. Supp. 1201 (D.N.J. 1996); Jones v. DeRosa, 238 F.R.D. 157 (D.N.J. 2006); Scouler v. Craig, 116 F.R.D. 494 (D.N.J. 1987); Preston v. Malcolm, C.A. No. 09-3714 (JAP), 2009 WL 4796797 (D.N.J. Dec. 8, 2009).

Atlantic City's argument that plaintiff's discovery motion should be denied because plaintiff did not plead a proper Monell claim is also meritless.  See LB at 2.  ("[T]he production of the internal affairs files should not be compelled because Plaintiff failed to satisfy the pleading requirement for his §1983 claim.") Citing to McTernan v. City of York, PA, 564 F.3d 636 (3d Cir. 2009), Atlantic City argues that plaintiff's complaint is deficient and, therefore, its motion should be denied.  However, now is not the time or context to address the adequacy of plaintiff's pleading. Atlantic City had the opportunity to challenge the sufficiency of plaintiff's pleading when it answered plaintiff's complaint on May 30, 2012 [Doc. No. 4] and amended complaint on March 4, 2013 [Doc. No. 17].  Instead of filing a responsive Rule 12(b) motion, Atlantic City answered the

complaint.  To date Atlantic City also has not filed a Rule 12(c)
motion. Atlantic City cannot use its failure to file a dispositive
motion as an excuse to avoid producing relevant discovery.  Pursuant
to Fed. R. Civ. P. 26(b)(1), plaintiff may obtain discovery relevant
to his claims.[11]  Since plaintiff pleaded a <u>Monell</u> claim, and the
claim is presently viable, Atlantic City must produce relevant
non-privileged discovery regarding the claim.  The Court agrees with
plaintiff that in order "to determine exactly what information is
relevant and 'essential' to plaintiff's claim, a review of the
Amended Complaint and the Counts contained therein is crucial."  LB
at 2-3.  This is exactly what the Court is doing. Plaintiff pleaded
that Atlantic City's deliberate indifference to its inadequate
customs, policies, and practices caused the violation of his
constitutional rights.  Therefore, <u>Monell</u> discovery is not off
limits.

   4. <u>Privilege and Relevancy</u>

   Pursuant to Fed. R. Civ. P. 26(b)(1), parties may obtain
discovery of non-privileged matter that is relevant to a party's
claim or defense.  The Court will separately address Atlantic City's
objection that the requested discovery is privileged and irrelevant.

---

[11] The Court is not ruling that Atlantic City waived its right to assert a Rule
12(b) or (c) defense.  The Court is instead ruling that defendant cannot rely upon
an alleged deficient complaint that it answered as an excuse to bar otherwise
relevant discovery.

a.  Law Enforcement Privilege

Although not discussed in detail, Atlantic City argues the requested IA records are privileged.  The Court disagrees.  Since this matter is pending in federal court the privilege issues in the case depend upon the application of Fed. R. Evid. 501.  This Rule provides that in federal question cases the federal common law of privilege applies rather than state law.  Torres, 936 F. Supp. at 1207-08.  Where, as in this case, the complaint alleges a federal question claim and supplemental state law claims, the federal common law of privilege applies to all claims.  Wm. T. Thompson Co. v. General Nutrition Corp., Inc., 671 F.2d 100, 104 (3d Cir. 1982). The justification for this rule is sound:

> [T]he rule providing for the application of the federal law of privilege, rather than state law, in civil rights actions is designed to ensure that state and county officials may not exempt themselves from the very laws which guard against their unconstitutional conduct by claiming that state law requires all evidence of their alleged wrongdoing to remain confidential.

Torres, 936 F. Supp. at 1213.

In a §1983 case a claim of governmental privilege "[m]ust be so meritorious as to overcome the fundamental importance of a law meant to insure each citizen from unconstitutional state action." Scouler, 116 F.R.D. at 496 (citation and quotation omitted). Without specifying its name, Atlantic City presumably relies on the qualified "law enforcement privilege."  The privilege is "designed to protect

documents and information whose disclosure would seriously harm the
operation of government." <u>Preston</u>, 2009 WL 4796797, at *6 ; <u>see also</u>
<u>Torres</u>, 936 F. Supp. at 1209.  As noted in <u>Torres</u>, the application
of the privilege "requires a court to weigh the government's interest
in ensuring the secrecy of the documents in question against the need
of the adverse party to obtain the discovery." <u>Id.</u>; <u>see also</u> <u>United</u>
<u>States v. O'Neill ("O'Neill")</u>, 619 F.2d 222, 227 (3d Cir. 1980).

There is no fixed rule for determining when the law enforcement
privilege applies. The decision in <u>Frankenhauser v. Rizzo</u>, 59 F.R.D.
339 (E.D. Pa. 1973), is the seminal case identifying the factors to
evaluate and balance when deciding whether the law enforcement
privilege applies.  The <u>Frankenhauser</u> factors are:

> (1) the extent to which disclosure will thwart
> governmental processes by discouraging
> citizens from giving the government
> information; (2) the impact upon persons who
> have given information of having their
> identities disclosed; (3) the degree to which
> governmental self-evaluation and consequent
> program improvement will be chilled by
> disclosure; (4) whether the information sought
> is factual data or evaluative summary; (5)
> whether the party seeking the discovery is an
> actual or potential defendant in any criminal
> proceeding either pending or reasonably likely
> to follow from the incident in question; (6)
> whether the police investigation has been
> completed; (7) whether an intradepartmental
> disciplinary proceeding have arisen or may
> arise from the investigation; (8) whether the
> plaintiff's suit is non-frivolous and brought
> in good faith; (9) whether the information
> sought is available through other discovery or
> from other sources; and (10) the importance of
> the information sought to the plaintiff's case.

Id. at 344.  The application of the law enforcement privilege is a fact intensive analysis that is dependent on the particular facts of each case, taking into consideration the nature of the claim, the possible defenses, the significance of the requested information, and other relevant factors.  See D'Orazio v. Washington Tp., C.A. No. 07-5097 (RMB), 2008 WL 4307446, at *3 (D.N.J. Sept. 16, 2008)(citing Roviaro v. United States, 353 U.S. 53, 62-63 (1957)).[12] Ultimately the decision boils down to the question of fundamental fairness.  If the requested documents are "essential to a fair determination of a cause, the privilege must give way."  Id. (citing Roviaro, 353 U.S. at 61).

A claim asserting the law enforcement privilege must be made by the head of the agency making the privilege after that person has personally reviewed the material and served "precise and certain reasons for preserving" the confidentiality of the communications. O'Neill, 619 F.2d at 226 (citation omitted).  Usually such claims are made by affidavit.  Id. Broad invocations of a privilege are unacceptable.  Id. at 225.  In addition, the party asserting the privilege "must demonstrate to the court that [the] relevancy [of the allegedly privileged IA documents] is outweighed by the specific harm that would ensue from their disclosure."  Torres, 936 F. Supp. at 1212.

---

[12] Although D'Orazio discussed the application of the "informer's privilege," its discussion is relevant because the informer's privilege and law enforcement privileges are analogous.  Id. at *4; see also O'Neill, 619 F.2d at 229.

Atlantic City's privilege argument is summarily denied since it did not properly support its assertion.  No proof was submitted by the Chief of Police (or his/her designee) that they personally reviewed the requested records.  Atlantic City's privilege argument is also summarily denied because Atlantic City did not offer "precise and certain reasons for preserving" the confidentiality of its IA records. See O'Neill, supra. Atlantic City merely makes broad allegations of harm such as the release of the IA files "will be harmful to the interests of law enforcement, not to mention the public interest."  LB at 10.  It also argues "[u]nlimited disclosure will interfere with future internal affairs investigations" and "[t]o release this information would certainly jeopardize the functions and procedures of the IA unit which would ultimately harm the public." Id. at 10, 13.  These "broadside invocation[s]" and "wholesale claims" of privilege are unsatisfactory.  O'Neill, 619 F.2d at 225-227; Torres, 936 F. Supp. at 1208-09.  Surely Atlantic City cannot deny that its IA files contain some non-privileged discoverable facts.  Atlantic City's indiscriminate claim of privilege is a sufficient ground in and of itself to reject its privilege claim.  When faced with such a claim the Court cannot make a just or reasonable determination of its validity. O'Neill, 619 F.2d at 228.  Nevertheless, even if the required affidavit was served, and even if Atlantic City served specific privilege objections, the Court would still hold that the requested records are not privileged.

Based on the facts and circumstances present herein, the Court has no hesitation ruling that the law enforcement privilege is outweighed by the public interest in disclosure of the requested IA files. The factors the Court has to weigh are presented in the context of a case where Timek and Wheaten have a long history of similar complaints against them. On top of this, Timek and Wheaten are no strangers to §1983 litigation, having been named as party defendants in other cases filed in this court, several of which are presently pending.[13] Further, Timek and Wheaten's IA records have been produced in other cases.[14]

As to the <u>Frankenhauser</u> analysis, the first and second factors to examine are whether disclosure will discourage citizen complaints and have a detrimental impact on them. The answer is no. As to the complainants, there is nothing embarrassing about the complaints and they are not likely to lead to undue publicity or retaliation. In fact, the complainants may very well want their identities revealed. This might give them comfort that there are other similarly situated

---

[13] See <u>Rivera v. Garry</u>, C.A. No. 12-4379 (NLH/AMD); <u>Rovzier v. Timek</u>, C.A. No. 07-5218 (RBK/AMD); <u>Williams v. Atlantic City</u>, C.A. No. 02-4501 (JHR/JBR): <u>Simmons v. Timek</u>, C.A. No. 04-572 (NLH/AMD); <u>Brooks v. City of Atlantic City</u>, C.A. No. 09-3110 (NLH/AMD); <u>Troso v. City of Atlantic City</u>, C.A. No. 10-1566 (RMB/JS); <u>Castellani v. City of Atlantic City</u>, C.A. No. 13-5848 (RMB/AMD); <u>Ellaisy v. City of Atlantic City</u>, C.A. No. 13-5401 (JBS/AMD); <u>Costantino v. City of Atlantic City</u>, C.A. No. 13-6667 (RBK/AMD); <u>Caldwell v. Whitman</u>, C.A. No. 94-5049 (JHR); <u>Worrall v. City of Atlantic City</u>, C.A. No. 11-3750 (RBK/JS); <u>Kelly v. City of Atlantic City</u>, C.A. No. 11-5976 (JBS/JS). The Court does not have access to the docket entries for cases filed against Timek and Wheaten in state court.

[14] See <u>Lapella v. City of Atlantic City</u>, C.A. No. 10-2454 (JBS/JS), Order dated January 18, 2012 [Doc No. 64]; <u>Worrall v. City of Atlantic City</u>, C.A. No. 11-3750 (RBK/JS), Order dated April 5, 2012 [Doc. No. 29]; <u>Jeffers v. City of Atlantic City</u>, C.A. No. 11-5975, Order dated September 18, 2012 [Doc. No. 23].

individuals who are pursuing relief for alleged constitutional violations. In any event, Atlantic City's IA files will be designated as "Confidential" pursuant to the terms of the parties' Discovery Confidentiality Order [Doc. No. 11] and will not be widely distributed or published during the discovery phase of the case.[15] The records will be reviewed by approved individuals and only for the purpose of prosecuting or defending this lawsuit.

The third _Frankenhauser_ factor examines whether government self-evaluation and program improvement will be chilled by the disclosure. The answer is no. Atlantic City argues, "Unlimited disclosure will interfere with future internal affairs investigations." LB at 10. Atlantic City also argues that if its IA files are released parties will not be "open, honest and fully forth-coming." Id. To the extent Atlantic City is referring to the citizen population, it underestimates their motivation, will and intelligence. The Court believes the public recognizes that a robust IA process and investigation is necessary to rein in "bad apples." If the release of their names and complaints is necessary to prevent this from occurring, the complaining public should view this as a small price to pay for helping to root out excessive force constitutional violations. Faced with a choice of keeping their identities secret and the possibility that their complaints could be "swept under the rug," or disclosure of their complaints that

---

[15] The Court is not weighing in on whether the IA records will remain confidential at trial.

could motivate a police force to protect rather than violate citizens' rights, it is likely complainants would favor disclosure. The Court also believes that most citizens agree with the Court that "[s]unlight is said to be the best of disinfectants; electric light the most efficient policeman." L. Brandeis, <u>Other People's Money</u> 62 (1933).

To the extent Atlantic City posits that its police officers and IA investigations will be "chilled" by the disclosure of its IA files, the Court completely discounts the argument. Atlantic City must recognize that it is statutorily bound to follow the dictates of the IAPP and that it would be violating the law if it does not comply with the required mandates. Shame on any municipality if it "chills" its investigation of potential police misconduct because it is concerned about what a thorough, unbiased and objective investigation would reveal. The Court's analysis is consistent with the case law favoring disclosure. "The balancing test for determining whether the law enforcement privilege applies must be conducted with an eye toward disclosure." <u>O'Neill</u>, 619 F.2d at 228; <u>Torres</u>, 936 F. Supp. at 1210; <u>Dawson v. Ocean Tp.</u>, C.A. No. 09-6274 (JAP), 2011 WL 890692, at *19 (D.N.J. March 14, 2011); <u>see also</u> <u>U.S. Nixon</u>, 418 U.S. 683, 710 (1974)("Whatever their origins, thee exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth.").

As to the fourth factor, the Court has not seen the requested records and does not know if they contain evaluative data. However, the records undoubtedly contain discoverable relevant facts surrounding the citizens' complaints. Further, even if the records contain "evaluative" materials they are not shielded and may be discovered. Scouler, 116 F.R.D. at 497. As to the fifth factor to examine, the plaintiff is not a criminal defendant and thus this factor weighs in favor of disclosure. As to the sixth factor, since it appears that the requested investigations are complete this weighs in favor of disclosure.[16] The seventh factor also weighs in favor of disclosure since there is no indication that there have been any intradepartmental disciplinary proceedings from the complaints. The eighth factor weighs in favor of disclosure since this case is not frivolous. The ninth factor also weighs in favor of disclosure because plaintiff has no other available source to obtain the information contained in the requested records. The tenth and final Frankenhauser factor is perhaps most important. That is, the importance of the information to the plaintiff's case. As will be discussed, this factor overwhelmingly favors disclosure. The requested documents are vital to plaintiff's Monell claim; fundamental fairness demands that they be produced. Thus, for the

---

[16] The latest two complaints involving Timek, dated March 20, 2012 and April 12, 2012, do not list a disposition. The fact that the investigations may be continuing does not bar their production. O'Neill, 619 F.2d at 229 ("We know of no Supreme Court case which provides support for such a broad amorphous Government privilege.").

foregoing reasons, the Court finds that the requested records are not protected by the law enforcement privilege.

b. Relevance

Simply because the requested records are not privileged does not necessarily require they be produced. The records must also be relevant to plaintiff's claims or Atlantic City's defense. The answer to whether the requested documents are relevant is a resounding yes.

Given the discussion infra regarding plaintiff's burden of proof regarding his Monell claim, the Court is at a loss to find a credible basis to argue that Timek and Wheaten's IA files are irrelevant. Accord Scouler, 116 F.R.D. at 496 ("[T]here can be no question of the relevancy of [the IA files] to the allegations of the complaint, particularly where" the complaint alleges inadequate supervision and training under §1983.). The Court has no doubt that the requested IA files are clearly relevant to plaintiff's claim that Atlantic City follows unconstitutional customs and that it failed to properly train its officers as to the proper use of force. At the moment plaintiff knows that at least 78 similar citizen complaints were made against Timek and Wheaten. Plaintiff also knows that Atlantic City's IA unit did not sustain any of the complaints. Plaintiff has made no secret of the fact that he intends to argue that Atlantic City has been "deliberately indifferent" to Timek and Wheaten's violent propensities, and that Atlantic City's IA unit is a sham. The information in the IA files is vital to these

allegations. For example, the files are relevant to determine if Atlantic City complied with its statutory duty to thoroughly, impartially and objectively investigate all allegations against Timek and Wheaten. See IAPP at 4-5, 18. The files are also relevant to determining whether the defendant officers' complainants were personally interviewed and if all relevant records were examined. Id. at 28. In addition, the files will reveal if Atlantic City's IA unit prepared an "objective investigation report" recounting "all of the facts of the case" and a "summary of the case" with "conclusions for each allegation and recommendation for further action." Id. at 45. These are "critical performance standards that must be implemented by every county and municipal law enforcement agency." Id. at 5.

Atlantic City will undoubtedly argue at trial that its IA investigations were adequate. For example, Atlantic City argues, "it is imperative to note that Officer Timek has only one internal affairs complaint that was sustained in March of 2006. Every other complaint against Officer Timek and Officer Wheaten was either "exonerated" or "not sustained." LB at 6. Plaintiff is entitled to test the defense. It is disingenuous for Atlantic City to argue that its officers' statistics show no misconduct but yet deny plaintiff the opportunity to test whether the evaluations of the complaints against them were "real." The best way for plaintiff to test Atlantic City's defense is for plaintiff to review Timek and

Wheaten's IA files. The fact that Timek and Wheaten were not disciplined for any of the complaints against them gives plaintiff good cause to believe that Atlantic City's IA investigations were not "real," "meaningful," and "objective." Plaintiff is not on a "fishing expedition." Plaintiff has a justifiable basis to believe that Atlantic City's IA investigations were bogus. Plaintiff may, therefore, focus discovery in this direction. Just as in Merman, supra, the trier of fact should have an opportunity to review the evidence to decide if the subject IA investigations were "valid and just, or instead, they may fortify the façade of a superficial investigatory process that, either by design or application, shields officer misconduct." 824 F. Supp. 2d at 593.

The Third Circuit has noted:

> The ["IA"] investigative process must be real. It must have some teeth. It must answer to the citizen by providing at least a rudimentary chance of redress when injustice is done. The mere fact of investigation for the sake of investigation does not fulfill a city's obligation to its citizens.

Beck, 89 F.3d at 974. The requested IA files are directly relevant to whether Atlantic City's IA process is "real." The mere fact that Atlantic City had an IA unit does not insulate it from liability. Beck further noted:

> Formalism is often the last refuge of scoundrels; history teaches us that the most tyrannical regimes, from Pinochet's Chile to Stalin's Soviet Union, are theoretically those with the most developed legal procedures. The

point is obviously not to tar the Police
Department's good name with disreputable
associations, but only to illustrate that we
cannot look to the mere existence of superficial
grievance procedures as a guarantee that
citizens' constitutional liberties are secure.
Protection of citizens' rights and liberties
depends upon the substance of the [IA]
investigatory procedures. Whether those
procedures [have] substance [is] for the jury's
consideration.

Id. Under the facts presented here, the requested IA files are fair game for discovery because they are directly relevant to plaintiff's claim that Atlantic City's IA process is a sham and that Atlantic City failed to properly train its officers. The requested files are also directly relevant to Atlantic City's defense that its IA procedures are adequate.

The Third Circuit's Beck, supra, decision is instructive. In Beck, like this case, the plaintiff alleged he was beat up by the police (City of Pittsburgh), and he attempted to prove at trial that the governing municipality was liable under Monell. At the conclusion of plaintiff's case the trial court granted Pittsburgh judgment as a matter of law. The Third Circuit reversed and held there was sufficient evidence for a jury to decide that the IA process was "structured to curtail disciplinary action and stifle investigations into the credibility of the City's police officers." 89 F.3d at 974. The Court noted the jury could find that the police officer's statements were "given special, favorable consideration." Id. In addition, that Pittsburgh's IA investigations were "a façade

to cover the violent behavioral patterns of police officers under investigation, to protect them from disciplinary action, and thereby perpetuate the City's custom of acquiescence in the excessive use of force by its police officers." Id. Discovery of the requested IA files is relevant to whether plaintiff can support the same arguments against Atlantic City in this case. It is noteworthy that the decision in Beck relied on "actual written civilian complaints." Id. at 975. This is the same information that should be in Timek and Wheaten's IA files.

In its Beck decision the Third Circuit also criticized Pittsburgh's process for investigating citizens' complaints of police misconduct because the testimony of witnesses "was rendered weightless" if they accompanied the complainant at the time of the incident, even if the IA investigator found the witness believable. Id. at 973. The Court also criticized Pittsburgh's investigations because the result of the investigations was based on the testimony of the complainant and accused officer "thereby disposing of them unfavorably for the complaining citizen." Id. at 973. In addition, defendant was criticized because the IA process did not consider "prior citizen complaints of an officer's excessive use of force as relevant in assessing a pending complaint, and manifested no interest in probing the credibility of the officer under investigation." Id. Atlantic City's IA files are relevant to whether plaintiff can support the same assertions in this case. As noted in Monaco, 2008

WL 8738213, at *7 (citation and quotation omitted), "police officers'
inclination to employ excessive force may be found to be a highly
predicable consequence of a municipality's failure to investigate
excessive force complaints."

The recent decision in another Atlantic City excessive force
case, Troso v. City of Atlantic City, C.A. No. 10-1566 (RMB/JS), 2013
U.S. Dist. LEXIS 163420 (D.N.J. Nov. 15, 2013), is a perfect
illustration of why plaintiff needs the requested IA files.[17]  In that
§1983 case the plaintiff sued Wheaten, other Atlantic City police
officers, and Atlantic City, alleging he was subject to excessive
force.  Atlantic City filed a motion in limine to exclude its
Internal Affairs Summary Repots and Use of Force Report Summaries.
See C.A. No. 10-1566, Doc. No. 79.  It argued that the documents are
"wholly irrelevant to the issue of the alleged failure of Atlantic
City to train its officers."  Id. at 8.  Atlantic City also argued
that the reports were irrelevant because they only contained
statistics with "no supporting facts or data," and "no details about
each complaint."  Id.  The plaintiff opposed the motion and argued,
like here, that Atlantic City condoned the use of excessive use of
force by its officers, and Atlantic City had "a policy of granting
police officers virtual impunity."  Brief in Opposition at 8, Doc.
No. 80.  The plaintiff also submitted Atlantic City's May 25, 2011
Certification attesting to the fact that since 2003 no Atlantic City

---

[17] Trial is scheduled to start in two weeks.

police officer has been disciplined for the excessive use of force. See Certification of Stacey Falcone, Doc. No. 80-2, Exhibit G. This remarkable representation was made even though Troso's brief summarized Atlantic City's IA statistics which revealed that for the calendar years 2004 to 2008 a total of approximately 350 Internal Affairs complaints for excessive force were made. See Brief in Opposition at 4-6.

Nevertheless, despite plaintiff's facially compelling statistics, the Court granted Atlantic City's motion in limine. The Court noted that "it is clear" that when a party seeks to submit statistical evidence showing the frequency of excessive force complaints and the rate at which the complaints are sustained to support a Monell claim under §1983, he "must show why those prior incidents were wrongly decided and how the misconduct in those cases is similar to that involved in the present action." Id. at *1 (quoting Katzenmoyer, 2012 WL 6691746, at *1). The Troso decision could not make it clearer why plaintiff is justifiably not satisfied with just the IA statistical information that Atlantic City produced. Plaintiff must know the details regarding the IA complaints and the follow-up investigations to support his Monell claim.

Troso is not the only decision that supports plaintiff's insistence that he should not have to rely solely on Atlantic City's statistics to prove his Monell claim. In Franks, supra, the Court

granted defendant Cape May County's motion for summary judgment in
a §1983 excessive force case. The Court explained:

> Nor does Franks's citation to statistics
> showing the number of unsubstantiated
> complaints support her allegations. Plaintiff
> provides no evidence that those complaints that
> were dismissed were improperly investigated and
> should have been sustained. Rather than simply
> reciting a number of complaints or offenses, a
> plaintiff must show why those prior incidents
> deserved discipline and how the misconduct in
> those cases is similar to that involved in the
> present action.

2010 WL 3614193, at *12 (citation and quotation omitted); see also

Katzenmoyer, 2012 WL 6691746, at *5 (granting summary judgment to

the City of Camden even though plaintiff offered evidence that

between 2003 and 2009 only one of 641 complaints against Camden police

officers was sustained). Based on these decisions plaintiff can

reasonably anticipate that if he just relies on IA statistics

Atlantic City will seek dismissal of his Monell clam via summary

judgment. The requested discovery is relevant to prove plaintiff's

Monell claim and to rebut Atlantic City's anticipated defense.

The decision in Worrall, supra, is not sufficiently compelling

to deny plaintiff's request for Timek and Wheaten's IA files. In

Worrell, an excessive force case remarkably similar to the instant

matter, the plaintiff alleged that Wheaten beat him up at the Dusk

Nightclub in Atlantic City on September 5, 2010. The Court noted

that between September 19, 2008 and June 8, 2011, Wheaten was the

subject of 21 complaints. Of the 21 complaints, 15 involved either

excessive force or some type of assault, standard of conduct, and improper search. 2013 WL 4500583, at *3. It is true that Atlantic City's motion for summary judgment was denied. ("Plaintiff has provided a series of complaints against Officer Wheaten that is sufficient to infer a pattern of violent behavior and unlawful conduct." Id. at *4.). However, the Court noted that plaintiff's evidence "teeters on the border of insufficiency." Id. This holding hardly gives plaintiff the comfort he needs to forego requesting otherwise relevant discovery. Another relevant decision is Garcia v. City of Newark, C.A. No. 08-1725 (SRC), 2011 WL 689616 (D.N.J. Feb. 16, 2011). In that case the Court denied Newark's summary judgment motion where one defendant officer was the subject of 35 excessive force and false arrest complaints before the incident in question, and six other defendants accounted for 55 complaints of similar misconduct. However, in addition to these statistics the plaintiff submitted an expert report attesting to Newark's practice of paying little or no attention to citizen complaints. Also, the IA investigator in the case testified he never sustained an excessive force allegation unless the Prosecutor found sufficient evidence to bring a criminal charge. Id. at *4.

One take away from Worrall and Garcia on the one hand, and Katzenmoyer and Troso on the other, is that the case law is far from clear that plaintiff can merely rely on statistical information to prove his Monell claim. Not surprisingly, Atlantic City intends to

rely on the Katzenmoyer and Troso line of cases.  See October 4, 2013

LB at 2, Doc. No. 44.  ("The temporal proximity of the complaints

coupled with the quantity of complaints pertaining to [Timek and

Wheaten] are inadequate evidence that the City had notice of any

offending policy, procedure or custom.")  Atlantic City cannot use

its statistics as a sword and a shield.  On the one hand Atlantic

City argues it satisfied its discovery obligations by producing the

statistics regarding the complaints made against Timek and Wheaten.

On the other hand, Atlantic City argues the statistics do not prove

plaintiff's Monell claim.  Plaintiff is entitled to relevant

discovery regarding the details of similar citizen complaints

against Timek and Wheaten since this information is in Atlantic City

IA files, and the Court has ruled that the files are not privileged,

the files must be produced.  Since the IAPP requires that Timek and

Wheaten's IA files should be available, the Court expects that all

of the requested files will be produced.  IAPP at 47 (police

departments should maintain internal affairs investigative records

as they relate to a particular officer for the career of the officer

plus five years).  Plaintiff must be allowed to examine all relevant

evidence so that he will have a fair opportunity to present an

effective case at trial. Caver v. City of Trenton, 192 F.R.D. 154,

159 (D.N.J. 2000).

5. <u>Scope of the IA Files to be Produced</u>

As an alternative, Atlantic City argues the scope of its production should be limited. It argues that all post-incident (August 7, 2010) IA files are irrelevant and that not all pre-incident files are relevant. These arguments are rejected.

a. <u>Post-Incident Discovery</u>

"It is well recognized that the federal rules allow broad and liberal discovery." <u>Pacitti v. Macy's</u>, 193 F.3d 766, 777 (3d Cir. 1999). The general scope of discovery is defined by Fed. R. Civ. P. 26(b)(1):

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to the discovery of admissible evidence.

Rule 26 does not limit discovery to evidence which tends to prove plaintiff's claim; nor does it require that the discovered evidence be inherently probative to any matter at issue. Rather, Rule 26(b)(1) provides that evidence relevant to any party's claim or defense is discoverable if it "bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." <u>Caver</u>, 192 F.R.D. at 159(citing <u>Oppenheimer Fund, Inc. v. Sanders</u>, 437 U.S. 340, 351 (1978)). While otherwise relevant evidence may be barred from discovery on grounds of privilege or burden, relevance remains a major factor in delineating proper

discovery.  See <u>NL Indus., Inc. v. Commercial Union Ins. Co.</u>, 144 F.R.D. 225, 234 (D.N.J. 1992) (citing <u>Nestle Foods Corp. v. Aetna Cas. & Sur. Co.</u>, 135 F.R.D. 101, 104 (D.N.J. 1990)).  Because discovery is not limited to evidence that is ultimately admissible, "[t]he relevance inquiry is significantly broader at the discovery stage than at the trial stage." <u>Nestle Foods Corp. v. Aetna Cas. & Sur. Co.</u>, 135 F.R.D. 101, 104 (D.N.J. 1990); <u>Unicasa Marketing Group, LLC v. Spinelli</u>, C.A. 04-4173 (PGS), 2007 WL 2363158, at *2 (D.N.J. Aug. 15, 2007) (citing <u>Nestle Foods Corp.</u>, <u>supra</u>). Nevertheless, the Court recognizes that discovery is not unlimited. Parties seeking information must still demonstrate that the information sought is reasonably calculated to lead to the discovery of admissible evidence.  <u>Caver</u>, 192 F.R.D. at 159.

As noted, a plaintiff who alleges municipal liability based on acquiescence by a policymaker to a custom must prove the existence of a custom that resulted in a constitutional violation, and that said custom is so "permanently and well-settled as to virtually constitute law." <u>McTernan</u>, 564 F.3d at 658 (citation and quotation omitted).  Atlantic City is correct that evidence of subsequent constitutional violations cannot be used to show its knowledge of an unconstitutional custom or policy at the time of plaintiff's August 7, 2010 incident.  See <u>Barrett v. City of New York</u>, 237 F.R.D. 39, 41 (E.D.N.Y. 2006).  Subsequent incidents, however, may be relevant to show a continuous pattern that supports a finding of an

accepted custom or policy.  See Beck, 89 F.3d at 972 (finding that post-incident events "may have evidentiary value for a jury's consideration whether [policymakers] had a pattern of tacitly approving the use of excessive force").  They are also relevant to issues of "pattern, intent, and absence of mistake."  Barrett, 237 F.R.D. at 41.

In Monaco, supra, the Court agreed that post-incident evidence is relevant to proving a pre-incident custom.  2008 WL 8738213, at *8 (collecting cases).  In fact, the Court stated that the evidence could be "highly probative." Id. (citation omitted).  There are good grounds to permit plaintiff's request for discovery of post-incident events because otherwise "plaintiff may encounter difficulties . . .,  because of the lack of available credible witnesses and the avenues for dispute and distraction over the actual facts of each specific incident." Id. (citation and quotation omitted).  Thus, where alleged police abuse is particularly conspicuous, "the disposition of the policymaker may be inferred from his conduct after the events that are the subject of the lawsuit." Id. (citation and quotation omitted).  Here, a substantial number of excessive force complaints were made against Timek and Wheaten with no recorded discipline.  If these allegations of serious misconduct received little attention and action from Atlantic City, the jury could conclude "that it was accepted as the way things are

done and have been done in the City." Id. (quoting Grandstaff v. City of Borger, Tex., 767 F.2d 161, 171 (5th Cir. 1985).[18]

Jurisdictions outside New Jersey and the Third Circuit also support the view that post-incident events may be relevant to a Monell claim. See Henry v. County of Shasta, 132 F.3d 512, 519 (9th Cir. 1997) ("Post-event evidence is not only admissible for purposes of proving the existence of a municipal defendant's policy or custom, but is highly probative with respect to that inquiry.") Foley v. City of Lowell, Mass., 948 F.2d 10, 14 (1st Cir. 1991) ("[A]ctions taken subsequent to an event are admissible if, and to the extent that, they provide reliable insight into the policy in force at the time of the incident."); Bordanaro v. McLeod, 871 F.2d 1151, 1167 (1st Cir. 1989) ("Post-event evidence can shed some light on what policies existed in the city on the date of an alleged deprivation of constitutional right."). Like its pre-incident conduct, Atlantic City's post-incident conduct is relevant to whether it has a custom of condoning excessive force by its officers and whether it has a longstanding custom of conducting sham IA investigations designed to insulate police officers from discipline or criticism. "Events after a disputed incident often shed light both on the intent of participants, and on institutional or individual patterns of behavior." Montalvo v. Hutchinson, 837 F. Supp. 576, 581 (S.D.N.Y.

---

[18] Monaco noted that the Fifth Circuit held that Grandstaff only applies to instances of "extreme" police misconduct. 2008 WL 8738213, at *8 n.6 (citing Snyder v. Trepagnier, 142 F.3d 791, 797 (5th Cir. 1998).

1993) (declining to find files concerning subsequent occurrences of alleged police misconduct inherently irrelevant).

   b. Pre-Incident Discovery

   Atlantic City argues it should not have to produce all of Timek and Wheaton's pre-incident IA files.  The Court disagrees.  The files are relevant to determining how entrenched and longstanding Atlantic City's alleged unconstitutional custom existed. Supervisory liability may be established "by showing a supervisor tolerated past or ongoing behavior or failed to train, supervise, and discipline subordinates."  Grande v. Keansburg Borough, C.A. No. 12-1968 (JAP), 2013 WL 2933794, at *10 (D.N.J. June 13, 2013)(citing Argueta v. U.S. Immigration & Customs Enforcement, 643 F.3d 60, 72 (3d Cir. 2011)).  In this vein the requested pre-incident files are relevant to plaintiff's punitive damage claims against Timek and Wheaten.  Plaintiff is entitled to know if his encounter with Timek and Wheaten was an isolated instance or if it was consistent with a longstanding and continuing practice.  In addition, the requested IA files are relevant to finding out when and if Atlantic City was on notice of its police officers' alleged excessive force problems. Accord Foley v. Boag, C.A. No. 05-3727 (SRC), 2006 WL 6830911 (D.N.J. May 31, 2006)(ordering the production of records dating back ten years because, inter alia, that is the time the defendant officer was with the police department); Barrett, 237 F.R.D. at 4 (investigations older than ten years may be relevant to establish

40

a pattern or knowledge, and should not be barred from discovery based solely on their age).

The decision in <u>Johnson v. City of Philadelphia</u>, No. CIV. A. 94-1429, 1994 WL 612785 (E.D. Pa. Nov. 7, 1994), does not compel a different result. In <u>Johnson</u> the court limited discovery to the five years immediately preceding the alleged constitutional violations. <u>Id.</u> at *11. In that case, however, the defendants argued that the plaintiffs' request for documents was "overly broad" and "unduly burdensome." <u>Id.</u> In addition, the disputed material was objectively "voluminous," involving personnel files and performance evaluations covering a period of up to twenty years. <u>Id.</u> Although the court in <u>Johnson</u> limited discovery to materials preceding the subject incident, the court affirmed the relevancy of all disputed documents (<u>id.</u> at *12), and gave plaintiffs the opportunity to discover the restricted material for good cause shown. <u>Id.</u> at *11.

To be sure, the Court's Opinion should not be read as a free pass to request all pre- and post-incident IA files in every case alleging police misconduct. Every case is different and a party's discovery requests must be evaluated pursuant to the standards set forth in Rules 26(b) and 26(b)(2)(C). <u>See</u> <u>Jones v. DeRosa</u>, 238 F.R.D. 157, 164 (D.N.J. 2006)("The executive or law enforcement privilege doctrine in federal courts is left to the courts to develop on a case-by-case basis."); <u>Forrest v. Corzine</u>, 757 F. Supp. 2d 473, 477 (D.N.J. 2010)(Magistrate Judges have wide discretion to manage

discovery.).  However, even though the Court is not weighing in on the merits of the case, plaintiff's claims are not frivolous.  The defendant officers have a long history of complaints without any discipline, which raises a legitimate question about the efficacy of Atlantic City's IA process.  Given Atlantic City's expected vigorous defense, fairness compels the Court to conclude that plaintiff is entitled to all the discovery he seeks.  Atlantic City has not argued that it is burdensome to collect and produce the requested records.  Even if it did, however, the weighing process lands in plaintiff's favor.  See Torres, 936 F. Supp. at 1213 (rejecting defendant's arguments that it should not have to review 1200 IA files).

6. Protective Order

The Court agrees with Atlantic City that precautions should be taken to protect the confidentiality of Atlantic City's IA files. The files should be designated as "Confidential" pursuant to the Discovery Confidentiality Order entered in the case. Although the files are discoverable, at this stage of the case their distribution should be limited to authorized individuals.  Also, the files should only be used for the purpose of prosecution or defense of this action and not for any business, commercial, competitive, personal or other purpose.  The Court also agrees that the personal information of Timek and Wheaten is irrelevant and may be redacted.  This includes social security numbers, addresses, telephone numbers, driver's

license numbers, financial information, and information pertaining to their family members and friends (unless they are relevant witnesses). If Atlantic City or Timek request to seal the IA files or otherwise restrict public access, they shall follow the requirements in L. Civ. R. 5.3(c).

7. <u>In-Camera Review</u>

Last, the Court declines Atlantic City's invitation to review its IA files <u>in camera</u>. In <u>United States v. Zolin</u>, 491 U.S. 554 (1989), the Supreme Court held that a district court may, in some circumstances also require an <u>in camera</u> review of documents. However, it held that the court should not conduct such a review solely because a party begs it to do so. <u>Id.</u> at 571. There must first be a sufficient evidentiary showing which creates a legitimate issue as to the application of the privilege asserted. <u>Id.</u> at 571-72. If a party requesting <u>in camera</u> review has not provided sufficient evidence to support a reasonable belief that the requested materials are not discoverable, the request should be denied. <u>Id.</u> Atlantic City has not made this showing so its request for an <u>in camera</u> review is denied.

<u>Conclusion</u>

Thus far the record has demonstrated that not one of the hundreds of excessive force complaints lodged against Atlantic City's police officers has been "sustained." In particular, the two officer defendants, Timek and Wheaten, have had scores of complaints lodged

against them, none of which resulted in any discipline. This is true even though the officers regularly appear in this court as defendants in §1983 excessive force cases, several of which are remarkably similar to the instant matter.

Atlantic City has taken a disingenuous discovery position. It argues that plaintiff is only entitled to review Internal Affairs statistics and then it argues the statistics in and of themselves cannot establish <u>Monell</u> liability. Atlantic City's discovery argument is soundly rejected by this Court and the applicable case law.

The Court, of course, is not ruling on the merits of plaintiff's claims. The Court is also not ruling that Atlantic City's Internal Affairs documents are admissible at trial. The Court is instead ruling that since the requested documents are not privileged, and they are relevant for discovery purposes, they must be produced. The documents are directly relevant to plaintiff's <u>Monell</u> claim and they will reveal whether plaintiff can support his argument that Atlantic City's Internal Affairs process and investigations are a sham. In addition, plaintiff expects the documents will reveal if, how, and why Atlantic City's police officers, and Timek and Wheaten in particular, repeatedly use excessive force with impunity.

Accordingly, for all the foregoing reasons, plaintiff's Motion to Compel Defendant Officers' Internal Affairs Files is GRANTED.  An appropriate form of Order consistent with this Opinion will be entered.

                              s/Joel Schneider
                              JOEL SCHNEIDER
                              United States Magistrate Judge

Dated: November 27, 2013