IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

MATTHEW GROARK,

                Plaintiff,

      v.

POLICE OFFICER FRANK TIMEK, et al.,

                Defendants.

Civil No. 12-1984 (RBK/JS)

### O P I N I O N [1]

The present discovery dispute follows up on the Court's earlier decision (Groark v. Timek, et al., ____ F. Supp. 2d ___, 2013 WL 6199187 (D.N.J. Nov. 27, 2013)("Opinion"), directing Atlantic City to produce all of its Internal Affairs ("IA") files for defendant Police Officers Frank Timek and Sterling Wheaton.[2] Plaintiff now requests the production of all of Atlantic City's IA files from 2003 to the present. For the reasons to be discussed, plaintiff's motion is GRANTED in part and DENIED in part. Although the Court denies plaintiff's request for all of Atlantic City's IA files, it directs Atlantic

---

[1] In order not to delay discovery, on June 19, 2014 [Doc. No. 70] the Court entered its Order granting and denying in part plaintiff's Motion to Compel Discovery [Doc. No. 55] that is addressed herein.  This Opinion sets forth the Court's reasoning.

[2] The incident in question occurred on August 7, 2010.  The produced IA files were dated from May 2001 to the present.

City to produce a "representative sample" of the files from January 1, 2003 to August 7, 2011 (one year post-incident).[3]

Background

The detailed background discussion from the Court's November 27, 2013 Opinion is incorporated by reference. In brief summary, plaintiff alleges that on August 7, 2010, Officers Timek and Wheaton beat him up without justification at the Dusk Nightclub in Caesar's Casino, Atlantic City, New Jersey. Although plaintiff was arrested and charges were pressed, all charges were subsequently dismissed. Similar to a spate of other lawsuits filed against Atlantic City, plaintiff's April 2, 2012 complaint includes a Monell claim.[4]

During discovery Atlantic City produced the defendant Officers' "Index Cards", which listed the dates, nature, and disposition of the internal affairs complaints alleged against Timek and Wheaton. This discovery revealed, inter alia, that from May 2001 to the present, Timek and Wheaton were collectively the subject of scores of complaints similar to

_____

[3] Plaintiff's motion raised three (3) other disputes that the Court addressed at oral argument. Plaintiff's request for additional IA policies and several missing IA files was denied as moot since the requested documents were produced after plaintiff filed his motion. The Court also denied without prejudice plaintiff's request for Atlantic City's monthly and quarterly IA reports. The Court did not deem the production of these reports necessary because defendant already produced its yearly IA statistics. Plaintiff may re-file his request if he later determines that the yearly statistics are irreconcilable.

[4] The known federal cases involving Timek and/or Wheaton are summarized in the Court's November 27, 2013 Opinion. 2013 WL 6199187, at *10 n.13. Another case involving Timek to add to the list is Adams v. City of Atlantic City, C.A. No. 13-7133 (JBS/AMD).

those asserted here. Atlantic City did not sustain any of the complaints and the defendants were never disciplined. Over Atlantic City's objections, the Court Ordered Atlantic City to produce copies of all of Timek and Wheaton's IA files as the Court determined they are relevant to plaintiff's Monell claim.

To further support its Monell claim, plaintiff now asks the Court to direct Atlantic City to produce all of its IA files from 2003 to the present. The Court estimates approximately 2000 files were opened, but it does not know for sure how many files still exist. Plaintiff argues he needs the requested files to show that Atlantic City has a "custom" of not abiding by mandated IA policies and tolerating its officers' misconduct, and that Atlantic City was deliberately indifferent to its custom of conducting deficient IA investigations. Brief at 3, Doc. No. 55. Plaintiff argues, "to prove Atlantic City has a long-standing custom of conducting investigations as pretense, Plaintiff requires more than [Timek and Wheaton's] files." Id. Otherwise, plaintiff argues, Atlantic City can argue Timek and Wheaton were exceptions to its normal practice. Plaintiff argues that "[o]nly by reading, cataloging, and analyzing the substance of [all of Atlantic City's IA] files can plaintiff demonstrate the real breadth and depth of the Monell violations of Defendant Atlantic City." Id. at 4. Plaintiff supports his

motion with the seven (7) page letter report of his expert, Richard Rivera.

Atlantic City opposes plaintiff's request. It argues the requested IA files are not relevant to plaintiff's claims and the Court should not consider Rivera's report. Atlantic City argues it should only have to produce the IA files for the defendant officers. Further, it argues that if it has to produce IA files from other officers they should be limited to instances where there were complaints about excessive force, false arrest or malicious prosecution, since these are the complaints plaintiff is making in the case. Atlantic City also argued it would be burdensome to produce the requested files.

<u>Discussion</u>

As the Court sees it, three main questions must be answered. First, in order to prove Atlantic City has a custom of conducting deficient IA investigations and tolerating its officers' misconduct, in particular the use of excessive force, is plaintiff limited to only reviewing the IA files for defendants Timek and Wheaton?  Second, if other police officers' files are produced should they be limited to complaints about excessive force, false arrest and malicious prosecution?  Third, should the Court direct Atlantic City to produce all of its IA files from 2003 to present? As will be explained, the answer to questions one and two is no.  As to the third question, although

4

Atlantic City will not be directed to produce all of its IA files from 2003 to the present, it will be directed to produce a representative sample of its files.

1.  IA Files for Officers Other than Defendants Timek and Wheaton

As discussed in detail in its November 27, 2013 decision, plaintiff is arguing, _inter alia_, that Atlantic City has a custom of conducting deficient internal affairs investigations and tolerating the misconduct of its police officers.  See Monell v. Department of Social Services of City of New York, 436 U.S. 658 (1978).  Specifically, plaintiff alleges in his February 22, 2013 amended complaint:

> 57. Defendant Atlantic City, through its agents and employees, promulgated customs, policies, practices, ordinances, regulations, and directives that caused the false arrest of the Plaintiff.
>
> . . .
>
> 59. Defendant Atlantic City, through its agents and employees, promulgated customs, policies, practices, ordinances, regulations, and directives that caused the use of excessive force against the Plaintiff.
>
> 60. Defendant Atlantic City has been deliberately indifferent to the violent propensities of its police officers, the individually named Defendant police officers in particular.

Plaintiff's amended complaint also alleges:

COUNT IV

. . .

5

89.  Defendant  Atlantic  City,  through  its  police
department,  established,  knew  of,  and  acquiesced  to
policies,  procedures,  and  customs  that  Defendants  knew
or  should  have  known  would  lead  to  a  violation  of  New
Jersey citizens' constitutional rights.

90.  Defendant  Atlantic  City,  through  its  police
department,  acted  with  deliberate  indifference  to  the
consequences    when    establishing    and    enforcing
inadequate policies, procedures, and customs.

91.  Defendant  Atlantic  City,  through  its  police
department,    established    inadequate    policies,
procedures,  and  customs  relating  to  the  stationing  and
conduct of its officers at Atlantic City nightclubs.

92.  Defendant  Atlantic  City,  through  its  police
department,    established    inadequate    policies,
procedures,  and  customs  with  regard  to  when  an  officer
may  effectuate  an  arrest,  the  amount  of  force
permitted  to  effectuate  that  arrest,  the  grounds
required  to  pursue  criminal  charges  against  an
individual,  and  when  an  officer  should  seek  medical
treatment for an assault victim.

As  to  plaintiff's  unconstitutional  custom  claim,  the  Court

previously wrote:

> Liability  based  on  a  custom  rather  than  a
> formal  adopted  policy  proceeds  on  the  theory
> that  the  relevant  practice  is  so  widespread
> as  to  have  the  force  of  law. … Custom  may
> also  be  established  by  proof  of  knowledge
> and  acquiescence. …  The  Supreme  Court  has
> recognized  that  where  a  violation  of  federal
> rights  is  a  "highly  predictable  consequence"
> of  an  inadequate  custom  in  a  situation
> likely  to  recur,  municipal  liability  may
> attach  based  upon  a  single  application  of
> the custom.

Groark, 2013 WL 6199187, at *5 (citations omitted). Importantly:

> Simply  showing  that  plaintiff  has  suffered  a
> deprivation  of  constitutional  rights  will
> not  alone  permit  an  inference  of  municipal

> culpability and causation. … Instead, plaintiff must demonstrate that the municipal action was taken with deliberate indifference to its known or obvious consequences…. A showing of simple or even heightened negligence will not suffice. … A pattern or continued adherence to an approach that a municipality knows or should know has failed to prevent tortious conduct of police officers may establish the conscious disregard for the consequences of [its] action necessary to trigger municipal liability. Id. Deliberate indifference may also be shown if it is obvious that a policy or custom would lead to constitutional violations.

Id. at *6. (citations and quotations omitted).

The Court agrees with Atlantic City that plaintiff's complaint and defendants' defenses frame the scope of relevant discovery. See Toth v. Cal. Univ. of Pa., No. 09-6192, 2011 WL 2436138, at *2 (W.D. Pa. June 15, 2011) ("The complaint and its claims circumscribe the scope of discovery. It is against these claims that discoverability is determined as to each discovery request made."). Nonetheless, given the allegations in plaintiff's amended complaint, and the case law as summarized above, the Court rejects Atlantic City's argument that only Timek and Wheaton's files for excessive force, false arrest and malicious prosecution are relevant. Atlantic City reads plaintiff's claims too narrowly. Liability based on a custom rather than a formal adopted policy proceeds on the theory that the relevant practice is so widespread as to have the force of

7

law. Custom may also be established by proof of knowledge and acquiescence. Groark, 2013 WL 6199187, at *5. Plaintiff's claims against Atlantic City do not just focus on how Atlantic City addresses complaints against Timek and Wheaton. Instead, plaintiff alleges that the Atlantic City Police Department established, acquiesced and knew that its policies and procedures as to all police officers, not just Timek and Wheaton, would violate citizens' constitutional rights. Amended Complaint ¶89. Thus, since plaintiff's claims are not just limited to how Atlantic City acts vis-à-vis Timek and Wheaton, the actions and IA files of other officers are relevant for discovery purposes. Plaintiff has made it clear that he is alleging the entirety of Atlantic City's IA process is a pretense or sham, not just as it relates to Timek and Wheaton. For example, plaintiff argues that although Timek and Wheaton's files demonstrate Atlantic City was deliberately indifferent to their misconduct, plaintiff is "seeking to prove a broader point: the City of Atlantic City has been deliberately indifferent to all officer misconduct and has a long-established custom of permitting officer misconduct." Motion at ¶23 (emphasis added). This being the case, plaintiff is not limited to only discovering IA files regarding Timek and Wheaton. Plaintiff is entitled to know if the IA process as to Timek and

Wheaton was an aberration, or if it was reflective of the customs, policies and procedures that apply to all officers.[5]

Further, it is plain that plaintiff is entitled to discovery relevant to Atlantic City's defenses. See Fed. R. Civ. P. 26(b)(1)("Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense."). In Worrell v. City of Atlantic City, C.A. No. 11-3750 (RBK/JS), 2013 WL 4500583, at *4 (D.N.J. Aug. 20, 2013), Atlantic City argued that because the plaintiff only provided evidence of the violent propensities of one police officer, he could not establish a custom as a matter of law. Although the court rejected this argument, Atlantic City may raise the same defense in this case. Thus, the IA files of other officers are relevant because plaintiff is entitled to know if the allegedly deficient IA investigations relating to Timek and Wheaton were aberrations, or if they were reflective of department wide deficiencies. Plaintiff is clearly entitled to discovery that is relevant to rebut a defense Atlantic City may raise.

This Court is not alone in directing Atlantic City to produce the IA files of police officers other than those of the named defendants. See Woodall v. City of Atlantic City, C.A. No. 12-4963 (RBK/AMD), October 25, 2013 Order, Doc. No. 23 (directing Atlantic City to produce all of its non-party police

---

[5] Plaintiff argues the complaints against Timek and Wheaton comprise only 5% of the total complaints for the years 2003 to 2010.  Brief at 3.

officers' internal affairs files from August 2006 to August 2010, which related to excessive use of force, false arrest/false imprisonment, malicious prosecution, and assault and battery); see also Foley v. Boag, C.A. No. 05-3727 (SRC) 2006 WL 6830911, at *3 (D.N.J. May 31, 2006)(requiring production of all internal affairs records and complaints against all police officers in the defendant municipality for ten (10) years); Reid v. Cumberland County, C.A. No. 11-5841 (NLH/AMD), March 18, 2013 Order at 12, Doc. No. 71. ("In light of the nature of the claims against the County, the Court finds information regarding past instances of excessive force of Defendant Officers and other officers to be clearly relevant to Plaintiff's Claims."); Torres v. Kuzniasz, 936 F. Supp. 1201, 1211 (D.N.J. 1996)("[S]upervisory opinions and responses to civilian complaints are highly relevant to proving municipal liability under 42 U.S.C. §1983 for a municipal entity's alleged failure to adequately respond to complaints of police brutality."). Therefore, the Court is on solid footing in holding that plaintiff may obtain the IA files of police officers other than the named defendants.

2.   IA Files for Factually Dissimilar Complaints

Plaintiff is not limited to only discovering IA files for complaints regarding excessive force, false arrest and malicious prosecution. Although other types of serious complaints may not

10

be factually similar to the subject August 7, 2010 incident, the mandated IA investigatory procedures are the same. The required statutory and regulatory guidelines for IA investigations discussed in detail in the Court's earlier Opinion do not differentiate between the types of complaints made. An analysis of the investigatory procedures and practices used in factually dissimilar claims will assist plaintiff to determine the depth and scope of Atlantic City's alleged inadequate IA investigations.[6] The facts of the underlying offense do not need to be identical for plaintiff to analyze whether Atlantic City has an unconstitutional custom of conducting deficient IA investigations and tolerating its police officers' misconduct. For discovery purposes, and under the circumstances present here, the Court does not accept the notion, for example, that Atlantic City's IA investigations for complaints about improper arrests, differential treatment, and "other criminal violation," are irrelevant to plaintiff's claims in the case. The Federal Rules of Civil Procedure "allow broad and liberal discovery." Pacitti v. Macy's, 193 F.3d 766, 777 (3d Cir. 1999). Courts have interpreted the federal rules to mean that discovery encompasses "any matter that bears on or reasonably could lead to other

---

[6] Atlantic City's IA complaints are statistically organized into the following eight (8) categories: Excessive Force, Improper Arrest, Improper Entry, Improper Search, Differential Treatment, Demeanor, Other Rule Violation and Other Criminal Violation.  See Plaintiff's Motion, Exhibit E (Atlantic City's Internal Affairs Summary Report Forms from 2000 to 2012).

matters that could bear on any issue that is or may be in the case." Kopacz v. Del. River and Bay Auth., 225 F.R.D. 494, 496 (D.N.J. 2004). The Court finds nothing incongruous about plaintiff arguing that if IA investigations regarding factually dissimilar serious complaints are deficient, that this is relevant to whether Atlantic City's IA investigations regarding excessive force complaints are also deficient and whether Atlantic City tolerated its officers' misconduct.

If plaintiff was on a "fishing expedition" the Court would not hesitate to limit his discovery requests. See Fed. R. Civ. P. 26(b)(2)(C)(iii)(the Court must limit the extent of discovery if it determines the burden or expense of the proposed discovery outweighs its likely benefit). However, this is not the case. The non-frivolous nature of plaintiff's claims is evidenced by the fact that scores of complaints have been asserted against Timek and Wheaton and they have never been disciplined. Further, plaintiff's counsel represents that only a miniscule percentage of Atlantic City's reported excessive force complaints have been sustained or resulted in any discipline.[7] Although in and of itself these statistics may not be enough to impose liability on Atlantic City (see, e.g., Katzenmoyer v. Camden Police Department, C.A. No. 08-1995 (RBK/JS), 2012 WL 6691746, at *5

---

[7] As plaintiff noted at oral argument, without explanatory testimony it is difficult to reconcile the reported numbers. This is due in part to the fact that different forms were used for different years, and not all forms contain the same information.

12

(D.N.J. Dec. 21, 2012); <u>Troso v. City of Atlantic City</u>, C.A. No. 10-1566 (RMB/JS), 2013 WL 6070028, *1 (D.N.J. Nov. 15, 2013)), they lend credence to plaintiff's claims for more discovery.

Further, the adequacy of Atlantic City's IA process was called into question in a recent decision. <u>Cordial v. Atlantic City</u>, C.A. No. 11-01457 (RMB/AMD), 2014 WL 1095584 (D.N.J. March 19, 2014). There, like this case, the plaintiff alleged "that Atlantic City should be held liable due to its custom of acquiescing in its officers' use of excessive force as demonstrated by its failure to conduct adequate Internal Affairs ("IA") investigations into excessive force complaints against police officers." <u>Id.</u> at *5. After acknowledging that this is a recognized theory of municipal liability (<u>id.</u>), the Court denied Atlantic City's motion for summary judgment. The Court held that the plaintiff "presented evidence from which a reasonable jury could infer that [Atlantic City's] IA investigation process is designed to insulate the accused officers from penalty." <u>Id.</u> at *6. The decision noted that Atlantic City's IA reports reflected that the complainant was not always interviewed, officers were only asked to provide a written statement, and officer statements were given much greater weight than civilian statements." <u>Id.</u> The Court held:

> From this evidence, a reasonable jury could find that the IA investigations were insufficient or inadequate and that Atlantic City exhibited deliberate

> indifference to the risk that its officers would use
> excessive force in a manner similar to that alleged
> here.

Id.

Plaintiff's expert submission also supports his request for the internal affairs files of non-defendant officers and for factually dissimilar complaints. See Plaintiff's Motion, Exhibit C, February 14, 2014 Letter of Richard Rivera, LLC ("Letter"). Rivera is plaintiff's police practices expert.[8] Rivera is a private consultant regarding police conduct and operations, and professes to having collected the county's largest database of police internal affairs dispositions and use of force incident reports. Letter at 2. Rivera opines that his review of "entire case files is the best methodology to gauge the quality, impartiality and thoroughness of an administrative investigation." Id. Further, he concluded:

> Conclusions may be drawn as to the handling of citizen
> complaints against these two officers [Timek and
> Wheaton] based on what has been presented thus far.
> However, it remains unknown how Internal Affairs, the
> Chief of Police and City of Atlantic City act when a
> complaint is sustained, when other police officers are
> the subject of administrative review or when training,
> policy and supervision issues are raised.  In order to
> determine to what extent those matters differ from
> Timek's and Wheaton's it is essential to review all
> Internal Affairs investigative files where other
> officers were the subject.

Id. at 7.

---

[8] Rivera's curriculum vitae is attached as Exhibit C to plaintiff's motion.

In addition, Rivera's report evidences the non-frivolous nature of plaintiff's Monell claim. Rivera reviewed seventy (70) IA files involving Timek and Wheaton. Motion at ¶18. Based on this review Rivera concluded there was a "catastrophic failure of [Atlantic City's] Internal Affairs to impartially and thoroughly investigate [the] subject officer(s) of citizen complaints." Letter at 3. He opines that Atlantic City's "police officers engaged in misconduct or criminal acts with impunity and little or no oversight of the officers of Internal Affairs." Id. He also opines that, "[t]he pattern of inadequate and biased (in favor of subject officers) IA investigations allowed Timek and Wheaton to continue their misconduct unchallenged throughout their careers culminating in more than six dozen IA cases adjudicated with "not sustained" or "exonerated" investigative findings." Id. Rivera also concluded that Atlantic City's IA findings involving Timek and Wheaten "are deliberately flawed and intentionally inadequate in favor of the officers and coincides with an organizational culture that encourages misconduct and corruption." Id. at 4. Rivera concludes his report with the following comment:

> Conclusions may be drawn as to the handling of citizen complaints against these two officers [Timek and Wheaton] based on what has been presented thus far. However, it remains unknown how Internal Affairs, the Chief of Police and City of Atlantic City act when a complaint is sustained, when other police officers are the subject of administrative review or when training,

policy and supervision issues are raised. In order to determine to what extent those matters differ from Timek's and Wheaton's, it is essential to review all Internal Affairs investigative files where other officers were the subject.

<u>Id.</u> at 7.

To be sure, the Court is not ruling that in every §1983 excessive force case the plaintiff is entitled to discovery of IA files of non-defendant officers and complaints factually dissimilar to the plaintiff's claims. Every discovery dispute has to be decided on its own facts. This case warrants broad discovery because of the nature and seriousness of plaintiff's claims. Plaintiff was allegedly seriously injured, his claims are not frivolous, and in plaintiff's own words he is making a "full frontal assault" on Atlantic City's IA process. Whether plaintiff will be successful or not on the merits is not for this Court to decide. This Court just has to decide the appropriate scope of discovery. <u>See</u> <u>In re Fine Paper Antitrust Litigation</u>, 685 F.2d 810, 817 (3d Cir. 1982)("[M]atters of docket control and conduct of discovery are committed to the sound discretion of the district court."). The Court will not limit plaintiff's discovery as Atlantic City suggests given the allegations in plaintiff's pleadings, plaintiff's theory of the case, and plaintiff's supporting case law and preliminary expert report.

Atlantic City's argument that the Court should ignore Rivera's preliminary report is rejected. ("Plaintiffs proposed expert has audaciously written to this Court…. This Court should not consider this correspondence, as it is premature and inappropriate." Brief at 9.).  Rivera's report was not intended to be plaintiff's final expert report.[9]  Instead, plaintiff submitted the analysis "as prima facie evidence of an endemic problem."  Brief at 4.  The Court, of course, is not deciding whether Rivera's opinions are true or not. That decision will be made by the final fact finder. However, the Court is justified in relying upon Rivera's preliminary report to decide that plaintiff's claims are not frivolous and that plaintiff is not on a fishing expedition. Indeed, it is likely that if plaintiff did not serve Rivera's preliminary report Atlantic City still would have argued that plaintiff was on a "fishing expedition." At least with a preliminary expert report plaintiff can dispel the notion that he is making up an argument out of "whole cloth."

Atlantic City argues Rivera's report should be disregarded because it is not admissible in evidence. Brief at 9-10. However, in ruling on a discovery motion the Court is not limited to only relying upon admissible evidence.  See Cooper

---

[9] Indeed, in Cordial the Court noted that the failure to provide an expert report on Atlantic City's police procedures or statistical analysis of IA complaints was not fatal to the plaintiff's Monell claim. 2014 WL 1095584, at *7.

Hospital/University Medical Center v. Sullivan, 183 F.R.D. 119, 129 (D.N.J. 1998). Atlantic City also argues, "the Court should not consider Plaintiff's expert opinion without affording Defendants' expert the opportunity to correspond to the Court all the reasons why the Atlantic City Police Department's Internal Affairs process is not a 'sham'." Brief at 10. The Court was always ready, able and willing to consider any submission Atlantic City served to oppose plaintiff's motion. However, the Court will not hold up discovery pending Atlantic City's expert's analysis. Atlantic City has had more than a fair opportunity to submit whatever evidence and arguments it wanted to in response to plaintiff's motion.

Atlantic City's opposition to plaintiff's relevancy arguments is also not persuasive. Atlantic City argues, "Internal Affairs files that have nothing to do with Plaintiff or Plaintiff's claims and/or are of a nature completely different than that of plaintiff's claims are irrelevant to this case." Brief at 2. This argument has already been discussed and discounted. It cannot be gainsaid that the Court disagrees with Atlantic City's argument that plaintiff's discovery requests have nothing to do with plaintiff and his claims. Further, legal authority already exists where Atlantic City was directed to produce IA files of officers other than the named defendants. Woodall, supra; Reid, supra. In addition, the Court has

explained why plaintiff is not limited to only discovering IA complaints about excessive force, false arrest and malicious prosecution. For discovery purposes the Court finds it is relevant, for example, for plaintiff to discover if Atlantic City had an unconstitutional custom of investigating improper entry, improper search and "other criminal violation" complaints. The Court does not accept the notion that the only relevant IA complaints are those on "all fours" with plaintiff's allegations. In this case, and for discovery purposes only, plaintiff is entitled to know if Atlantic City effectively ignored or inadequately investigated any type of serious complaints against its police officers, and tolerated any kind of serious officer misconduct, not just those directly factually analogous to the claims at issue.

Plaintiff's burden of proof is not straightforward. In order to impose §1983 liability pursuant to a custom plaintiff must show Atlantic City's actions were taken with "deliberate indifference" to its known or obvious consequences. Board of County Com'rs of Bryan County, Okl. v. Brown, 520 U.S. 397, 407 (1997). Negligence will not suffice. Id. A pattern or continued adherence to an action that the municipality knows or should know has failed to prevent tortious conduct by its police officers can establish the requisite conscious disregard for the consequences of its actions such that a municipality may be held

19

liable. <u>Cordial</u>, 2014 WL 1095584, at *4. Thus, plaintiff's discovery should not be so narrowly tailored so as to deny him a fair opportunity to get a complete picture of Atlantic City's customs and their effects. As noted, plaintiff is arguing, <u>inter alia</u>, that Atlantic City has a custom, policy and procedure of conducting IA investigations to insulate officers from liability. Frankly, given this theory the Court is at a loss to understand why it is not crystal clear that IA files for all serious IA complaints, and not just those for excessive force, are relevant for discovery purposes.

In its previous Opinion the Court wrote:

A pattern or continued adherence to an approach that a municipality knows or should know has failed to prevent tortious conduct of police officers may establish "the conscious disregard for the consequences of [its] action necessary to trigger municipal liability."

2013 WL 6199187, at *6 (citations omitted). Thus, Atlantic City's custom regarding its investigation of all serious citizen complaints, not just excessive force complaints, is relevant to whether it was deliberately indifferent to the consequences of its actions and whether it tolerated its police officers' misconduct. Again, on this record, and for discovery purposes only, the Court is not prepared to discount any serious violations of the required IA procedures and policies. Of course, the Court is not ruling on the admissibility of any IA

20

file. Nevertheless, it is well settled that the scope of discovery is broader than admissibility of evidence at trial. Nestle Foods Corp v. Aetna Cas. & Sur. Co., 135 F.R.D. 101, 104 (D.N.J. 1990).

Atlantic City argues, "Plaintiff is requesting files in [an] attempt to establish claims that are not even contained in the complaint." Brief at 8. Atlantic City zeroes in on the fact that plaintiff did not specifically plead the term "internal affairs" in his complaint. Atlantic City's argument, however, fails to recognize the language, substance and import of plaintiff's allegations. Plaintiff's allegations repeatedly challenge Atlantic City's alleged unconstitutional customs, policies, and procedures. (Amended Complaint at ¶¶59, 89, 90, 91 and 92). Plaintiff alleges these practices led to the violation of his constitutional rights. Id. Plaintiff's discovery is directly aimed at his contention that Atlantic City's police department had an unconstitutional custom, policy, and practice of conducting deficient IA investigations that it "knew or should have known would lead to a violation of New Jersey citizens' constitutional rights." Id. at ¶89. The fact that plaintiff did not specifically use the words "internal affairs" is not fatal and does not render relevant IA files "off-limits." The key term is "custom." Plaintiff is challenging Atlantic City's customs as to its IA investigations, and its practice of

21

tolerating officer misconduct. The Court agrees with plaintiff that its amended complaint, "plainly and fairly encompasses a claim that Atlantic City's internal affairs division has inadequate policies, procedures, and customs and deliberately ignores the excessive force used by its officers." Reply Brief at 2.

Atlantic City is displeased with the fact that the Court used the term "sham" in its earlier Opinion. ("Plaintiff <u>never</u> claimed that Atlantic City's internal affairs investigations were a 'sham' until this Court's Opinion." Brief at 7 (emphasis in original)). One would have to ignore the entire history and proceedings in the case to fail to recognize that Atlantic City's alleged deficient IA customs and practices are the heart of plaintiff's <u>Monell</u> claim. Whether plaintiff refers to Atlantic City's IA process as "bogus," a "pretense," a "sham'," or "deficient," the import is the same.[10] That is why the terms have been used interchangeably in the case. Plaintiff contends that Atlantic City is deliberately indifferent to its custom of

---

[10] The formal definitions of these terms are not materially different. "Bogus" is defined as "not genuine," "counterfeit" or "sham". "Pretense" is defined as "a false reason or explanation that is used to hide the real purpose of something," "an act or appearance that looks real but is false," and "a claim of having a particular quality, ability, condition, etc." "Sham" is defined as "something that is meant to trick or deceive people" and "words or actions that are not sincere or honest." "Deficient" is defined as "lacking in some necessary quality or element" and "not up to a normal standard or complement." http://www.merriam-webster.com/dictionary (last visited July 16, 2014.)

conducting and administering a constitutionally deficient IA process and tolerating its police officers' misconduct.

3.   Plaintiff's Request for all IA Files

Thus far the Court has ruled that (1) plaintiff may discover IA files for officers other than Timek and Wheaton, and (2) plaintiff may discovery IA files other than those for complaints about excessive force, false arrest and malicious prosecution. The last question to address is whether plaintiff may discover all of Atlantic City's IA files from 2003 to the present. As will be discussed, the Court finds this request goes too far.

The Court does not know for certain how many complaints were lodged against Atlantic City's police officers from 2003 – present.[11]  As best the Court can determine from Atlantic City's Internal Affairs Summary Reports, the numbers are as follows:

                2003 –    129
                2004 –    172
                2005 –    207
                2006 –    199
                2007 –    198
                2008 –    179
                2009 –    287
                2010 –    210
                2011 –    186 (citizen complaints)
                2012 –    120 (citizen complaints)
                2013 –    Not provided

        Total    1887[12]

---

[11] This is a difficult task given that Atlantic City used different reporting forms over the years.
[12] The Court used the statistics for the number of cases received during the year.  See Exhibit E.

The mere fact that plaintiff is asking for approximately 2000 IA files does not in and of itself disqualify plaintiff's request. See, e.g., Torres, 936 F. Supp. at 1214 (ordering production of 1200 files); Foley, supra (requiring production of all Internal Affairs records dating back ten (10) years); Weller v. Am. Home Assur. Co., C.A. No. 3:05-cv-90, 2008 WL 1097883, at **4-5 (N.D.W.Va. April 10, 2007)(overruling objection despite claim that response would take "at least hundreds of man hours). Nonetheless, given the number of files that plaintiff already reviewed, the Court finds that plaintiff's request for another approximate 2000 files is too much. While the scope of discovery pursuant to Rule 26 is broad, it is not unlimited and may be circumscribed. Bayer AG v. Betachem, Inc., 173 F.3d 188, 189 (3d Cir. 1999); Kopacz v. Delaware River and Bay Authority, 225 F.R.D. 494, 497 (D.N.J. 2004). Even if documents are relevant the Court has discretion to limit discovery where the discovery sought is unreasonably cumulative or duplicative, or where the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(2). The Court has "broad discretion to tailor discovery narrowly" to meet the needs of each case. Crawford-El v. Britton, 523 U.S. 574, 598 (1998). "[A] discovery request may be denied if, after assessing the needs of the case, the amount in controversy, the parties'

resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues, ... the District Court finds that there exists a likelihood that the resulting benefits would be outweighed by the burden or expenses imposed as a consequence of the proposed discovery." EEOC v. FAPS, Inc., No. 10-3095, 2012 WL 1656738, at *23 (D.N.J. May 10, 2012). This rule of proportionality "is intended to guard against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry." Leksi, Inc. v. Federal Ins. Co., 129 F.R.D. 99, 105 (D.N.J. 1989) (quoting Rule 26 advisory committee note) (internal quotations omitted); see also Public Service Enterprise Group, Inc. v. Philadelphia Elec. Co., 130 F.R.D. 543, 551 (D.N.J. 1990) (employing the rule of proportionality to exclude "marginally relevant evidence" from the scope of discovery); Bowers v. N.C.A.A., C.A. No. 97-2600 (JBS), 2008 WL 1757929 (D.N.J. Feb. 27, 2008).

Rather than directing Atlantic City to produce 2000 files, the Court directs it to produce a "representative sample" of its IA files from January 1, 2003 – August 10, 2011.[13] The Court is not prepared at this time to define for the parties the

---

[13] Although the Court Ordered Timek and Wheaton's IA files to be produced up to the present, the Court believes that giving plaintiff a representative sample for one year after August 10, 2010 is sufficient.

25

parameters of a "representative sample."  The Court is directing the parties to meet and confer on the issue and to contact the Court only if they cannot come to an agreement.[14]

Conclusion

Accordingly, for all the foregoing reasons, plaintiff's motion is GRANTED in part and DENIED in part.  Plaintiff is permitted to discover IA files for police officers other than the named defendants. Further, plaintiff is not limited to only discovering IA files for excessive force, false arrest and malicious prosecution complaints.  Plaintiff may discover IA files for all serious police complaints.  Plaintiff's request to review all of Atlantic City's IA files from 2003 to the present is denied. Instead, Atlantic City must produce a representative sample of its IA files from January 1, 2003 to August 10, 2011 (one year post-incident). The parties shall meet and confer in a

---

[14] The Court's preference is for the parties to agree on what comprises a representative sample.  Defense counsel has indicated Atlantic City will retain its own expert.  It seems to the Court that the logical way to proceed is for the parties to agree to define the scope of IA files their experts will review and let the experts reach their own conclusions.  This makes sense since Fed. R. Civ. P. 26(a)(2)(B) requires that each side produce in discovery the IA files "considered" by each expert. Glielmi v. Raymond Corp., C.A. No. 09-5734 (RMB/JS), 2013 WL 209131, at *4 (D.N.J. Jan. 17, 2013); Employees Committed for Justice v. Eastman Kodak Co., 251 F.R.D. 101, 105 (W.D.N.Y. 2008)("Considered" is defined as anything received, reviewed, read, or authored by the expert, before or in connection with the forming of his or her opinion, if the subject matter relates to the facts or opinions expensed.) Therefore, even if the parties do not agree on what is a "representative sample," the parties' experts will ultimately review the same files.

good faith to attempt to agree upon a representative sample. The Court should be contacted if the parties cannot agree.[15]


                                        s/Joel Schneider
                                        JOEL SCHNEIDER
                                        United Magistrate Judge

Dated:  July 17, 2014


---

[15] As noted, an Order memorializing these rulings was entered on June 19, 2014 [Doc. No. 70].